Patricia GALLMAN; Glenda Deloney; Willie Jean Sharkey; and Beulah Czirkelbach, Plaintiffs,

v.

Samuel R. PIERCE, Jr., in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; Leon Hunter, in his official capacity as Executive Director of the Richmond Housing Authority; and the Richmond Housing Authority, Defendants.

No. C–84–0006–CAL.

United States District Court, N.D. California.

June 26, 1986.

As Amended July 18, 1986.

Miye A. Goishi, Patricia A. Higa, Philip J. Bertenthal, Contra Costa Legal Services Foundation, Richmond, Cal., for plaintiffs.

Malcolm Hunter, City Atty., Wayne S. Nishioka, Asst. City Atty., Richmond, Cal., Lynn K. Richardson, Asst. U.S. Atty., San Francisco, Cal., for Hunter & Richmond Housing Authority.

## AMENDED OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

This case is presently before the court on cross-motions for summary judgment. The issue is whether tenants participating in a subsidized housing program are entitled to a notice of good cause at least thirty days prior to a proposed eviction. For the reasons discussed below, the court concludes that California law requires that landlords who participate in so-called Section 8 existing housing programs must serve their tenants with notices setting forth the grounds for eviction at least thirty days prior to any court proceedings. Summary judgment will be entered for plaintiffs and against defendants.

### I.

Section 8 of the United States Housing Act of 1937, as amended (42 U.S.C. § 1437f (1982 & Supp. II 1984)) is designed to provide safe and sanitary low-income housing to qualified recipients. *See* 42 U.S.C. § 1437 (1982) (Declaration of Policy). The general philosophy of Section 8 is that appropriate housing can best be supplied through a combination of federal, local, and private efforts. H.R.Rep. No. 1114, 93rd Cong., 2d Sess. 18 (1973). The Secretary of Housing and Urban Development ("HUD") is the federal officer primarily responsible for implementing Section 8. 42 U.S.C. § 1437f(b) (1982).

Section 8 operates in part through the existing housing assistance payments ("HAP") program. 42 U.S.C. § 1437f(a). The HAP program is a rent subsidy program. It employs a system of contracts involving HUD, local public housing authorities ("PHA's"), private landlords and qualified tenants. 42 U.S.C. § 1437f.

HUD initiates the distribution of federal housing assistance by entering into an annual contributions contract ("ACC") with a local PHA. 42 U.S.C. § 1437f(b)(1). The ACC, *inter alia* sets the maximum monthly rent to be paid to apartment owners, requires the PHA to achieve a certain eco-

nomic mix of recipients, and mandates that the PHA incorporate certain contractual provisions in all agreements with a private landlord participating in the Section 8 HAP program. 42 U.S.C. § 1437f(c), (d).

HUD makes payments to the PHA[1] pursuant to the ACC, both for use as rent subsidies and to compensate the PHA for its management expenses. 42 U.S.C. § 1437f(b), (c); 24 C.F.R. § 882.104(a) (1985). The PHA in turn distributes the funds, implements the relevant legal mandates, and oversees both the landlords and tenants. 24 C.F.R. § 882.116(c), (d), 882.-209(a), (b) (1985). It is also responsible for the selection of eligible units, owners, and tenants. 42 U.S.C. § 1437f(c), (d).

The PHA distributes the HUD rent subsidies through a second series of contracts. It first advertises the availability of housing assistance payments and invites eligible families to submit applications. 24 C.F.R. § 882.207. It then selects participating families in accordance with HUD-established criteria. *Id.* § 882.209. The PHA issues a certificate of participation to the families selected. The certificate describes the terms and conditions of the family's participation in the Section 8 HAP program. *Id.* §§ 882.102, 882.209(b)(2).

The certificate holder, *i.e.,* the prospective tenant, is responsible for locating qualifying privately owned housing. *Id.* § 882.-103. If the owner of the housing consents to participate in the Section 8 HAP program, the tenant and the owner submit the proposed lease to the PHA. *Id.* § 882.210. The PHA reviews the lease, and if it meets with PHA and HUD requirements, the PHA issues a notice of approval. *Id.* § 882.210(k).

The PHA and the owner then enter into a HAP contract. This contract, *inter alia,* specifies the amount of rent for the unit, the sum that the PHA will pay directly to the landlord, the amount of rent that the tenant must pay, and provisions governing maintenance and inspection. The HAP contract additionally specifies the grounds for termination of a lease. 42 U.S.C. § 1437f(d). It incorporates HUD's regulations, which provide that the landlord may terminate the lease for "serious or repeated violation" of the lease, violations of law, or "other good cause." *Id.* § 1437f(d)(1)(B)(ii); 24 C.F.R. § 882.-215(c)(1) (1985).

The tenant and the owner then execute the lease. The lease must contain certain provisions set out in the HUD regulations. *See* 24 C.F.R. § 882.209(j) (1985). The regulations also prohibit certain provisions. *See* Appendix I to 24 C.F.R. § 882 (1985). Upon the issuance of the certificate of participation, the execution of the lease, and the HAP contract, the Section 8 HAP program is in effect as to that housing unit.

II.

Plaintiffs challenge Section 8's existing housing program procedures for the termination and eviction of tenants.

Plaintiffs are four Contra Costa county residents who are participants in the Section 8 HAP program. Plaintiffs received, in accordance with California landlord-tenant procedures, three-day and/or thirty-day notices of termination of their Section 8 assisted leases. Plaintiffs Gallman and Sharkey were later served with summons and complaints in unlawful detainer actions to vacate their apartments.

Plaintiffs claim that the notices of termination are constitutionally infirm and violate Section 8's good cause requirements. They allege that the notices failed to inform them of the reasons for termination of their leases. Plaintiffs assert that the lack of reasons engendered uncertainty, which caused them to at least consider relinquishing their assisted apartments. Plaintiff Gallman also claims that she moved to a less desirable neighborhood rather than confront the pressure of the uncertainty over her lease. Plaintiff Shar-

---

**1.** A PHA is "[a]ny State, county, municipality or other governmental entity or public body ... which is authorized to engage in or assist in the development or operation of housing for low-income Families." 24 C.F.R. § 882.102 (1985).

key also decided to move rather than contest the termination notice. She argues that without written notice of the reasons for termination she was unable to contest the eviction. Plaintiffs Czirkelback and Deloney were able to persuade their landlords to retract their thirty day notices. They assert, however, that the landlords' failure to state reasons for the terminations effectively disabled them from challenging the evictions. Plaintiffs further allege that they fear future similar occurrences.

Plaintiffs claim a constitutionally protected property interest in their Section 8 leases. They contend that the statutory requirement of good cause for termination of Section 8 leases creates a procedural requirement that landlords must (1) state the reasons for proposed evictions (2) at least thirty days prior to actions to terminate the leases. They claim that they are not now receiving such notices under the existing procedures. Plaintiffs contend that they are thereby aggrieved by agency action within the meaning of 5 U.S.C. § 702. They seek a declaration that the absence of such notice deprives them of due process in contravention of the fifth and fourteenth amendments and violates implicit requirements of Section 8. Plaintiffs additionally ask this court to enjoin future notices of termination that do not have good cause notices. They also seek a declaration that 24 C.F.R. § 882.215(c) (1985), which now governs termination procedures, is void because of the lack of a good cause notice requirement; they therefore ask for a judgment requiring HUD to rescind that regulation and replace it with one requiring a thirty-day good cause notice.

Because this court determines that plaintiffs' requested relief is available under state law, the court will discuss only certain of the relief requested by plaintiffs.

### III.

The issues of the type of the notice required to terminate a Section 8 HAP lease and the validity of 24 C.F.R. section 882.-215 are properly before this court on cross-motions for summary judgment. The parties and the court concur that no material issues of fact remain, and that the pending issues are solely ones of law.

### IV.

The controversy over the notice and termination provisions governing Section 8 HAP leases arose out of the 1981 congressional amendments to Section 8. Prior to 1981, eviction of a Section 8 HAP lease required PHA approval. Amendment of Regulations to Section 8, 49 Fed.Reg. 12,-234 (1984). Paragraph 8(d)(1)(B) mandated that all contracts between owners and PHA's include a provision reserving to that agency the sole right to issue a notice to vacate. The landlord was permitted only to petition the PHA to terminate a particular tenancy. 42 U.S.C. § 1437f(d)(1)(B).

The regulations in effect prior to 1981 governing termination procedure required the owner to comply with both the dictates of local law and the relevant HUD regulations. 24 C.F.R. § 882.215 (1981). The pre-amendment section 882.215 mandated that the owner provide a written notice of the proposed eviction, allowing the tenant at least ten days to respond. The notice was required to include a statement of grounds for termination. A copy of the notice was to be sent to the PHA. The owner had no actual authority to evict a tenant; rather, the PHA would review the stated reasons for termination and the tenant's written response. The PHA would then determine whether eviction was appropriate. 24 C.F.R. § 882.215 (1981).

Those regulations also limited the grounds for termination. Appendix I to section 882.215 set out required lease provisions; and appendix II listed prohibited lease terms. Subsection 215 provided that the PHA should authorize a noticed eviction "unless it finds the grounds to be insufficient under the Lease." 24 C.F.R. § 882.215 (1981).

Congress amended Section 8 upon passage of Omnibus Reconciliation Act of 1981. Paragraph 8(d)(1)(B)(ii) now provides that:

the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause.

42 U.S.C. § 1437f(d)(1)(B)(ii).

This amendment merged the Senate and House proposals.[2] It made two significant changes in the prior law. It first shifts from the PHA's to the owners the sole right to terminate a Section 8 HAP lease. It additionally sets out a standard for the eviction of Section 8 HAP tenants. Senate Budget Comm., Omnibus Reconciliation Act of 1981, S.Rep. No. 139, 97th Cong., 1st Sess. 256, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 552.

Congress amended Section 8(d) in order to "minimize disturbance of the private relationship under State law between the unit owner and the tenant." *Id.* The Senate recognized that "[t]he provision of housing opportunities for assisted families depends on voluntary participation by private owners of existing housing." *Id.* The amended section 8(d)(1)(B)(ii) was therefore designed to "assure owners that the procedural and substantive rights of the assisted tenant are the same as those applicable to the non-subsidized tenants." *Id.*

After those amendments by Congress, HUD initiated two successive sets of regulations in response to the amendments. It first promulgated interim rules. *See* 47 Fed.Reg. 33,497 (1982). HUD then adopted

final rules in 1984. The final regulations governing termination procedure, set forth at 24 C.F.R. § 882.215 (1985), underlie the instant dispute. The present procedures for the creation and termination of a Section 8 HAP lease are as follows.

The lease between the landlord and the tenant must be (1) in writing, and (2) for an indefinite term. 24 C.F.R. § 882.215(a). Rental payments must be made monthly. State law governs the construction of the tenancy thus created, and California law interprets indefinite leases with monthly rentals as month to month tenancies. Cal. Civ.Code § 1944 (Deering 1985).

The Section 8 HAP regulations limit the landlord's power to evict a tenant. Paragraph 882.215(c) governs the termination of tenancies created after May, 1984.[3] It generally restricts the landlord's power to terminate a tenancy. Subsection (c) however permits termination under certain circumstances. The regulation authorizes termination for:

(i) Serious or repeated violation of the terms and conditions of the Lease; (ii) Violation of Federal, State, or local law which imposes obligations on the tenant in connection with the occupancy or use of the dwelling unit and surrounding premises; or (iii) Other good cause.

24 C.F.R. § 882.215(c)(1). Subsection (c)(2) sets out a non-exclusive list of circumstances constituting "other good cause" for termination. 24 C.F.R. § 882.215(c)(2). It defines "other good cause" as follows:

**2.** The Senate proposal deleted the requirement that the PHA have the sole authority to issue a notice to vacate. The Senate replaced that clause with one equating the procedural and substantive rights of the Section 8 assisted tenant with those available to private tenants under existing state and local law and the lease terms. The House Conference Report, however, added instead the provision restricting termination of a lease to circumstances creating "serious or repeated violation of the lease, applicable state, local or federal law, or for other good cause." H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 694–95, *reprinted in* 1981 U.S.Code Cong. & Ad. News 396, 1010, 1053.

**3.** The leases of plaintiffs Deloney, Sharkey, and Czirkelbach were executed after May, 1984.

These tenancies are therefore subject to termination in accordance with § 882.215(c). Plaintiff Gallman contests the notice of termination she received in 1983 and the subsequent unlawful detainer action. Her notice is therefore governed by the interim regulations, rather than the final rules.

Plaintiffs originally challenged HUD's interim regulations as well as the final regulation codified at 24 C.F.R. § 882.215. Plaintiffs, however, are no longer pursuing their attack on the interim regulations, except insofar as the interim regulations, like the final regulations, fail to require a thirty-day good cause notice of termination. All of the leases involved in the instant dispute, except that of plaintiff Gallman, are governed by the final rules.

Failure by the Family to accept the offer of a new Lease in accordance with paragraph (a)(4) of this section; a Family history of disturbance of neighbors or destruction of property, or of living or housekeeping habits resulting in damage to the unit or property; criminal activity by Family members involving crimes of physical violence to persons or property; the Owner's desire to utilize the unit for personal or family use or for a purpose other than use as a residential rental unit; or a business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, desire to rent the unit at a higher rental).

*Id.*

### V.

The regulations in essence provide that the law of the state in which the tenant resides is to be the law governing termination procedures. Paragraph (c)(3) sets out the procedure by which a landlord can terminate a Section 8 HAP lease. It provides that:

(3) The Owner may evict the tenant from the unit only by instituting a court action. The Owner must notify the PHA in writing of the commencement of procedures for termination of tenancy, at the same time that the Owner gives notice to the tenant under State or local law. The notice to the PHA may be given by furnishing to the PHA a copy of the notice to the tenant.

24 C.F.R. § 882.215(c)(3) (1985). Paragraph (e) permits any notices required under paragraph (c)(3) to run concurrently with notices mandated under state or local law. *Id.* § 882.215(e).

Under California law, a landlord may terminate a month to month tenancy only after providing either a three-day notice or a thirty-day notice. Cal.Civ.Code § 1946 (Deering 1985); Cal.Civ.Proc.Code § 1161 (Deering 1985). Such notices were used in this case.

The three-day notice applies only in "default" situations, *e.g.*, when the tenant fails to pay the required rent. Cal.Civ.Proc. Code § 1161(2) (Deering 1985). The three-day notice form is set out at 14 *Cal.Forms of Pleading and Practice Ann.*, 340–43 (forms nos. 4, 5, 6) (1967). It requires the landlord to list the amount of rent due. The purpose of this notice is to permit the tenant to cure the default. Service of this three day notice is a prerequisite to a suit for wrongful detainer. Cal.Civ.Proc.Code § 1161(2).

More common, however, is the thirty-day notice of termination. Both parties to a month to month lease must give a thirty day written notice in order to terminate the tenancy. Cal.Civ.Code § 1946 (Deering 1985). The form is also set out at 14 *Cal.Forms of Pleading and Practice Ann.* 337–38 (form no. 1) (1967). It is in essence merely a notice of termination; no reasons for the termination need be included.[4]

Upon receipt of a three-day notice, the tenant has three days in which to cure the default. Cal.Civ.Proc.Code § 1161.5 (Deering 1985). Upon receipt of a thirty-day notice, the tenant's only option is to relinquish possession at the end of the thirty day period.

---

4. Defendants Richmond Housing Authority and Leon Hunter have submitted the thirty day notice of termination form supplied to Section 8 HAP landlords. The form contains a few blank lines captioned "THE REASON FOR TERMINATION IS AS FOLLOWS." However, this form does not ensure that tenants receive a statement of reasons thirty days prior to termination of their tenancies. The RHA sends out these forms to the landlords upon receipt of a notice from the landlord of his intent to terminate a Section 8 HAP tenancy. The landlord, however, need not notify RHA of the intent to terminate a lease until the notice has already been sent to the tenant. The landlord is therefore unlikely to receive the RHA's form until *after* he has sent the thirty day notice. The RHA also acknowledges that the space provided for a statement of reasons is optional. Defendant characterizes its notice form as simply providing a type of encouragement to landlords to furnish notice. The termination notices that plaintiffs actually received from their landlords indicate that the landlords tend to use their own forms, which have no space for a statement of reasons. Apparently none of the notices that plaintiffs received indicated the reasons for the proposed terminations.

If the tenant fails to quit the premises (or in appropriate cases, rectify the default), the landlord can institute unlawful detainer proceedings in state court. Cal. Civ.Proc.Code § 1161 (Deering 1985). Unlawful detainer is a summary remedy, designed primarily to restore timely possession to the rightful party. *De La Vera v. Municipal Court*, 98 Cal.App.3d 638, 640, 159 Cal.Rptr. 648, 649 (1979).

In order to institute an unlawful detainer proceeding, the landlord must file a verified complaint. Cal.Civ.Proc.Code § 1166 (Deering 1985). The complaint must:

> set forth the facts on which he seeks to recover, and describe the premises with reasonable certainty, and may set forth therein any circumstances of fraud, force, or violence which may have accompanied the alleged forcible entry or forcible or unlawful detainer, and claim damages therefor. In case the unlawful detainer charged is after default in the payment of rent, the complaint must state the amount of such rent. Upon the filing of the complaint, a summons must be issued thereon.

*Id.*

The form approved by the Judicial Council of California and mandated for use as a complaint in wrongful detainer proceedings requires no explicit statement of the reasons for the termination. Rather, it permits the plaintiff to check one of four boxes (Numbers 10–12, 17) to indicate the nature of the claim. *See West's Ann.Cal.Judicial Council Forms*, Form 982.1(90) (1986). Line 10 simply provides "[p]laintiff demands possession from each defendant because of expiration of a fixed term lease." Line 11 states that "[a]t the time the 3–day notice to pay rent or quit was served, the amount of rent due was $____." Line 12 provides a space for the plaintiff to inscribe the daily fair market rental value of the property. Line 17 provides a box for the plaintiff to check if it has attached additional allegations.

The tenants in unlawful detainer actions are entitled to a hearing. Cal.Civ.Proc. Code § 1166a (Deering 1985). The court must hold the hearing no later than twenty days after the initial request. *Id.* § 1167.4. The proceedings in an unlawful detainer action are, however, both brief and circumscribed. The tenant may not present any defenses "extrinsic to the narrow issue of possession, which the unlawful detainer procedure seeks speedily to resolve." *Green v. Superior Court*, 10 Cal.3d 616, 633, 517 P.2d 1168, 1179, 111 Cal.Rptr. 704, 715 (1974) (en banc). Tenants may therefore interpose only those defenses which (1) relate directly to the issue of possession; and (2) if established, would entitle the tenant to remain in possession of the premises. *Id.*

In summary, the termination proceedings under Section 8's existing housing program are left by Congress and HUD to state law. And California statutes, forms and procedures do not require that the landlord give the tenant notice of the reasons for termination (other than the non-payment of rent or the expiration of the term of the lease).

As stated in section II above, plaintiffs contend that the termination procedures for a Section 8 HAP lease must include the requirements of (1) a thirty day notice (2) which gives the tenant a statement of reasons for the termination. Their contentions are based upon the language of Section 8, the regulations adopted by HUD, the intent of Congress, and the U.S. Constitution.

Defendants oppose each of plaintiffs' contentions. They attack plaintiffs' standing to litigate the issue, plaintiffs' interpretation of the legislation history, and plaintiffs' due process analysis. Issue has been joined on these questions by the cross-motions for summary judgment. For the reasons stated below, the court need not resolve all of those issues.

## VI.

HUD makes two arguments which allegedly deprive plaintiffs of standing to litigate the above claims. HUD contends that (1) plaintiffs' claims are moot, and (2) the federal involvement in the termination pro-

cedures is insufficient to constitute governmental action. The local defendants (RHA and its executive director) also assert that they have no power to alter the procedures or forms regarding notice.

### A. *Mootness*

■ Defendants' mootness argument is based on plaintiffs' ongoing participation in the Section 8 HAP program. Each plaintiff has either entered into a new Section 8 lease after the threatened or actual eviction giving rise to this suit, or has continued to receive Section 8 assistance under the original lease. Defendants argue both that plaintiffs are not confronted with such potential harm as to support the requested relief, and that plaintiffs' entering into new Section 8 HAP leases negate any alleged deficiencies in the prior eviction notices.

It is axiomatic that this court's Article III jurisdiction extends only to actual cases and controversies. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983). In order to comply with this "threshold requirement" of Article III, plaintiffs must basically demonstrate a personal stake in the outcome of the suit. *Id.* This has three elements: "(1) a distinct and palpable injury, (2) a causal connection between the injury and the defendant's conduct, and (3) a substantial likelihood that the relief requested will redress the injury." *N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346, 1350 (9th Cir. 1984) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).

In order to present a case or controversy within Article III's jurisdictional limits, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983). If the court is unable to grant a plaintiff meaningful relief, it has no jurisdiction over the dispute. *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1254 (9th Cir.1984). An action "becomes moot when interim relief or events have eradicated the effects of the defendant's acts or omission, and there is no reasonable expectation that the alleged violation will recur." *N.A.A.C.P. v. City of Richmond*, 743 F.2d at 1352–53. Determining whether a particular suit is moot is more difficult when a plaintiff seeks non-monetary relief.[5] Past exposure to illegal conduct is in and of itself insufficient to create the requisite case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. at 102, 103 S.Ct. at 1665. However, the Supreme Court has long recognized that a court's power to grant an injunction does survive the cessation of the illegal conduct at issue. *See, e.g., United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).[6]

In order for plaintiffs to have standing to seek an injunction they must demonstrate that their claims of continuing injury are not speculative. *City of Los Angeles v. Lyons*, 461 U.S. at 109, 103 S.Ct. at 1669. That is, plaintiffs must demonstrate at least the threat of a real or immediate injury. *Enrico's, Inc. v. Rice*, 730 F.2d at 1253. If plaintiffs are unable to show the requisite level of probable injury, they may nonetheless comply with Article III under the "capable of repetition, yet evading review" exception to the doctrine of mootness. *See, e.g., N.A.A.C.P. v. City of Richmond*, 743 F.2d at 1353. Plaintiffs must establish two elements in order meet this

---

**5.** The Supreme Court in *City of Los Angeles v. Lyons*, 461 U.S. at 109, 103 S.Ct. at 1669, noted that despite its holding that Lyons had no standing to seek injunctive relief, he did have standing to bring a damages suit against the city. A suit for damages by its very nature demonstrates a continuing, unredressed injury; such cases are therefore rarely moot. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.3 (2d ed. 1984) ("The availability of damages or other monetary relief almost always avoids mootness, while much more difficult questions may be presented by demands for injunctive, declaratory, or other specific relief."). In this case, plaintiffs exclusively seek non-monetary relief.

**6.** A court must independently review requests for declaratory and injunctive relief for possible mootness. *Enrico's, Inc. v. Rice*, 730 F.2d at 1254.

exception. They must show "(1) that the duration of the challenged action or injury must be too short to be fully litigated; and (2) there must be a reasonable likelihood that the same party will be subject to the action again." *Id.*

The court concludes that plaintiffs have demonstrated a real and immediate threat of harm. However, even if that standard were not met, plaintiffs have at least demonstrated both the brevity of the termination procedures and the reasonable likelihood of future terminations of their Section 8 housing. They therefore meet the requirements for at least the application of the exception to mootness defined in *N.A.A.C.P. v. City of Richmond.*

Defendants correctly assert that none of the plaintiffs is currently in receipt of a termination notice. They further accurately claim that each of the prior attempted terminations has now been resolved. In and of itself, however, those circumstances are insufficient to moot plaintiffs' case. As shown above, month to month tenants receive either a three- or thirty-day notice of termination. A period of a month, and certainly of three days, is a very brief time in which to litigate unstated reasons for termination, or alleged statutory and constitutional alleged deficiencies in the notice. *See N.A.A.C.P. v. City of Richmond,* 743 F.2d at 1353 (when the injury suffered by denial of a parade permit is fleeting, plenary review of difficult constitutional questions is "simply not possible."). This is particularly true since the unlawful detainer action is limited to "the narrow issue of possession." *Green v. Superior Court,* 10 Cal.3d at 633, 517 P.2d at 1179, 111 Cal. Rptr. at 715. Further, plaintiffs are harmed while they are facing eviction and are unsure of the reasons for the termination. Plaintiffs therefore satisfy the first portion of the two-part test of *N.A.A. C.P. v. City of Richmond.*

Plaintiffs also satisfy the second requirement. There can be no serious question about the likelihood that the plaintiffs will at some time in the future receive other termination notices. Their tenancies are month to month. They are still receiving Section 8 HAP assistance. And they participate in the HAP program. They can be presumed to continue to reside in such assisted housing under the Section 8 HAP program. It is probable that they will receive termination notices of their month to month tenancies at some future date. A California landlord must always send a three- or thirty-day notice to terminate a month to month lease. Plaintiffs' assertion of likely future injury is credible. This case is therefore justiciable.

### B. *Governmental Action*

■ Plaintiffs charge defendants with violating their fifth and fourteenth amendment rights to procedural due process. They also claim that the local defendants' (RHA and its executive director) conduct violates 42 U.S.C. § 1983. All defendants assert that this court cannot hold them responsible for the alleged deficiencies in the termination notices. They argue that insufficient governmental action exists to make the present controversy other than a private dispute. They therefore conclude that plaintiffs cannot invoke the U.S. Constitution or section 1983.

The issue of governmental versus private action is therefore basic to plaintiffs' claims under federal law and the U.S. Constitution. It is also important to the application of the California state law discussed in section VII below.

The due process clause of the fifth amendment applies only to the federal government. *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, 487 (9th Cir.1974). Private persons are ordinarily exempt from its mandates. *Id.* Claims brought pursuant to the fourteenth amendment and Section 1983 are similarly proper only against "states". *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974); *Stonecipher v. Bray,* 653 F.2d 398, 401 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). Courts have recognized, however, that in certain circumstances, the conduct of private actors may fairly

be attributed to state or federal governments. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 & n. 6, 102 S.Ct. 2764, 2769 & n. 6, 73 L.Ed.2d 418 (1982); *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d at 487. The standards used to review the degree of "state" involvement are the same for claims brought pursuant to Section 1983, the fifth amendment and the fourteenth amendment. *Rendell-Baker v. Kohn*, 457 U.S. at 838, 102 S.Ct. at 2769 ("under color of law" requirement for § 1983 purposes equivalent to the state action requirement under the fourteenth amendment); *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d at 487 (the standards for state action under the fourteenth amendment are identical to those used for determining the existence of federal action under the fifth amendment).

The Supreme Court utilizes a factor test to ascertain the existence of "state" action. The first factor is whether the government is actually responsible for the challenged conduct. Regulation of a private entity is insufficient in and of itself to convert private acts into those of the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn*, 457 U.S. at 840–41, 102 S.Ct. at 2770–71. The fact that Section 8 HAP landlords receive a portion of their rent from HUD through the PHA is therefore insufficient alone to constitute governmental action. When, however, the relevant statutes and regulations are viewed in their entirety this court concludes that "state action" exists for the reasons stated below.

Those reasons involve the second factor, the degree of state encouragement in the conduct. The general rule is that the government is responsible only when it has exercised "coercive power" or "significant encouragement." *Blum v. Yaretsky*, 457 U.S. at 1004, 102 S.Ct. at 2786. "Mere approval" or "acquiescence" in private conduct fails to constitute governmental action. *Id.* In the instant case, HUD and the PHA have at least significantly encouraged the conduct that plaintiffs contest.

Section 8 contains a complex statutory and regulatory scheme. It defines rights and duties of the landlord and tenant. It sets the standards for termination of leases. And Section 882.215(c) directs landlords to terminate tenancies in accordance with state law. The commentary accompanying passage of the final rule notes that whatever due process rights tenants have should be addressed for the first time in a state judicial proceeding. *See* 49 Fed.Reg. 12,-235 (1984). This court therefore concludes that plaintiffs have established the requisite level of governmental encouragement.

Defendants rely chiefly upon *Blum v. Yaretsky*, 457 U.S. 991, 1003–1005, 102 S.Ct. 2777, 2785–2786, 73 L.Ed.2d 534 (1982). That case, however, does not apply here. First, the issues in the two cases are distinct. The Court in *Blum v. Yaretsky* characterized the dispute as a challenge to the decision of a private nursing home to transfer or discharge a patient, rather than an attack on government-mandated procedures or regulations. *Id.* 457 U.S. at 1003, 102 S.Ct. at 2785. Plaintiffs in the instant case directly challenge the government-mandated termination procedures. Plaintiffs here do not seek to overturn the good cause requirement for termination; nor do they argue that the substantive decision to terminate their tenancies was unconstitutional. Therefore, unlike the claimants in *Blum v. Yaretsky*, plaintiffs are directly challenging federal and state regulations and procedures.

Second, in contrast to the doctors in *Blum v. Yaretsky*, the landlords in the instant case have relatively little discretion. The Court in *Blum v. Yaretsky* noted that federal law required that a doctor certify a patient as requiring medically necessary services in order for that patient to obtain Medicaid. The doctor, however, rather than the government, exercised his own independent judgment regarding the necessity for treatment of a particular patient. *Id.* at 1005–1007, 102 S.Ct. at 2786–2787. The Court held that since the doctor exercised his independent judgment "according to professional standards that are not man-

dated by the State," the doctor's conduct could therefore not be attributed to the state. Here, while HUD or a PHA do not require, coerce or encourage termination of a lease, those agencies and Congress have promulgated statutes and regulations restricting the landlord's ability to terminate a lease. These restrictions limit both substance and procedure. That is, a landlord can terminate a lease only for the reasons listed in section 1437f(d)(1)(B)(ii) and 24 C.F.R. § 882.215. The regulations additionally require landlords to terminate the leases in accordance with state procedure. Landlords participating in the Section 8 HAP program therefore do not exercise their "independent, professional judgment" either in matters of substance or procedure to the degree present in *Blum v. Yaretsky.*

This court therefore concludes that plaintiffs have adequately demonstrated the existence of governmental action and have the requisite standing to litigate this suit.[7]

### C. Property Right

■ A property right in a governmental benefit exists if continued receipt of that benefit is guaranteed in the absence of cause for termination. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–1562, 56 L.Ed.2d 30 (1978). That is, if the relevant statutes, regulations or practices require cause in order to withdraw a particular benefit, a property right exists which is protected under the constitution. *Arnett v. Kenne-*

*dy,* 416 U.S. 134, 166, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring).

■ The statute and regulations in this case give rise to a constitutionally protected property interest. A Section 8 HAP lease can only be terminated if one of three circumstances exists (illegal acts, serious and repeated violations of the lease, or "other good cause"). 42 U.S.C. § 1437f(d)(1)(B)(ii); 24 C.F.R. § 882.215(c). The term "other good cause" indicates that the first two grounds for termination also constitute good cause. The grounds for termination are therefore each examples of good cause sufficient to create a property interest in a Section 8 HAP lease.

Defendants concede that if governmental action exists, then plaintiffs have a constitutional property interest protected under the fifth and fourteenth amendments. (*See* HUD's Motion for Summary Judgment at 16). As this court has concluded that governmental action exists, plaintiffs have a constitutionally protected property interest in their Section 8 tenancies.

### VII.

■ Does California state law require the protections which plaintiffs seek in this suit? If state law requires that plaintiffs receive a thirty-day good cause notice, this court need not reach the question of whether federal statutes or the U.S. Constitution mandate it.[8]

---

7. This court further determines that the Richmond Housing Authority and its executive director, Leon Hunter, are proper defendants. These defendants argue that they should be dismissed because they have no authority to determine which procedures are used to terminate a Section 8 lease. They insist that they must use the HAP contract and lease forms provided by HUD. These defendants further argue that they do everything in their power to assist tenants in receiving a good cause notice by providing the landlords with a 30 day notice form with a space for a statement of reasons. However, those arguments do not merit dismissal. They do not establish that the present termination procedures are legally adequate or that the RHA and its director are not governmental actors for purposes of this suit. Their motion for dismissal is therefore denied.

8. The federal judiciary has a "traditional practice" of "refusing to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised ... by the parties." *Neese v. Southern Railway Co.,* 350 U.S. 77, 78, 76 S.Ct. 131, 132, 100 L.Ed. 60 (1955). When a party "raises both statutory and constitutional arguments in support of a judgment, ordinarily [the court] first address[es] the statutory argument in order to avoid unnecessary resolution of the constitutional issue." *Blum v. Bacon,* 457 U.S. 132, 137, 102 S.Ct. 2355, 2359, 72 L.Ed.2d 728 (1982). Plaintiffs' request for injunctive relief under the fifth and fourteenth amendments assumes that the current California statutory procedures are constitutionally infirm. This court must therefore address that assumption prior to reviewing the constitutional arguments.

As discussed above, paragraph 882.215(c) requires landlords to terminate a Section 8 lease in accordance with procedures under state law. *See* 24 C.F.R. § 882.215(c)(3), (e); 49 Fed.Reg. 12,235 (1984). The California procedures for termination of month to month tenancies therefore apply to this case. The parties agree that forms similar to those described above are being used by Section 8 HAP landlords. Also as discussed above, those forms and the California statutes do not require that the landlord notify the tenant of the reasons for termination.[9] And some terminations can be on a three day notice, rather than the thirty days plaintiffs seek. This court therefore concludes that California *statutory* procedures do not afford the plaintiffs the relief that they request.

However, this court should not limit its examination to the California statutes. Other forms of California law, such as decisional law, must also be examined. *Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir.1985). And the issue is not just whether California law requires a good-cause notice of termination by *private* parties. The issue is rather whether California law requires such a notice when one of the parties is a "governmental" actor and is prohibited from terminating a benefit except for cause.

A federal court should examine the state law as defined by the state's highest court. If that court has not ruled on the state law issue, the federal court should review other sources of law, such as statutes, treatises, restatements and appellate decisions in order to determine how the state's highest court would rule if confronted with the issue. *Id.; Molsbergen v. United States,* 757 F.2d 1016, 1020 (9th Cir.), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985); *Scandinavian Airlines Systems v. United Aircraft Corp.,* 601 F.2d 425, 427 (9th Cir.1979) ("When the California Supreme Court has not spoken, California Courts of Appeal decisions are data for determining how the highest California court would rule.").

The parties here have assumed that the only relevant state law issue is whether California law requires a statement of reasons in a thirty day termination notice for a lease between *private* parties.[10] However, the language of paragraphs 882.215(c) and (e) refer to "State or local law." That phrase is not limited to state procedures for purely private tenants and landlords. The issue for decision is whether California law requires landlords, acting under government regulations in publicly assisted housing, to include a statement of reasons in a thirty day notification for termination, when that tenancy can only be terminated for good cause.

California decisional law has created an exception to the usual procedures and forms required under Cal.Civ.Proc.Code § 1946 which is relevant here. That exception applies when the landlord receives funding from a government agency. That exception is discussed below and compels this court to hold that plaintiffs are entitled under California law to a statement of reasons in a thirty day termination notice.

In *Appel v. Beyer,* 39 Cal.App.3d Supp. 7, 114 Cal.Rptr. 336 (1974), the Appellate Department of the Los Angeles County Superior Court addressed the "novel" questions of whether landlords participating in § 221(d)(3) of the National Housing Act,

---

**9.** Except for the non-payment of rent or the expiration of the term of the lease.

**10.** The commentary accompanying promulgation of the final rule indicates that HUD assumed that "the owner is and should be subject only to the same tenant notice requirements which apply to an unassisted tenant." 49 Fed. Reg. 12,235 (1984). The agency also noted, however, that "[t]he questions involved in a termination of tenancy are best resolved in the State judicial proceedings for eviction of a tenant." *Id.* As noted above, the final regulation simply provides for notice to be given in accordance with state or local law. This court therefore construes the regulations as adopting whatever procedure is available under state law. That is, the court assumes that HUD does not require states to treat Section 8 HAP landlords like private landlords if state law provides some higher measure of regulation. This court therefore concludes that HUD imposed no maximum procedural ceiling upon the states.

(12 U.S.C. § 1715*l* (d)(3)), and § 101 of the Housing and Urban Development Act of 1965 (12 U.S.C. § 1701s), constituted state actors and if so, what procedural due process a landlord must afford a subsidized tenant in terminating a lease. *Id.* at 9, 114 Cal.Rptr. at 337.

The litigants in the two cases that comprise *Appel v. Beyer* were tenants receiving federal housing assistance. The tenant in the *Appel* case had been renting a unit in a privately-owned apartment complex, the construction of which was funded through a federally guaranteed mortgage loan. The tenant paid less than the market rate of rent for the apartment. In the companion case (*Korda v. McDaniels* ) the landlord had borrowed most of the funds necessary for construction from the federal government. The landlord additionally received rent supplement payments on behalf of the tenant from the Federal Housing Administration, the precurser to HUD. *Id.* at 9–10, 114 Cal.Rptr. at 337. Both tenants, pursuant to the relevant regulations, had entered into month to month leases. The required lease forms contained a thirty day termination notice provision. Neither lease required good cause for the termination, nor a statement of reasons for termination. *Id.* The landlords had given the tenants the thirty day notice required under section 1946 of the California Civil Code. Upon expiration of the thirty days, the landlords filed unlawful detainer actions. The tenants affirmatively defended on the grounds that the landlords were governmental actors, thereby entitling the tenants to a due process notice and hearing on the issue of good cause. *Id.*

The court in *Appel v. Beyer* initially addressed the issue of governmental action. It held that FHA and HUD had limited the landlords' traditional freedom of contract by, *e.g.,* funding only tenants of low to moderate income, requiring a series of contracts, charging only rents approved by the agency, and imposing certain maintenance requirements. The court concluded that the government was a joint participant with the landlords. *Id.* at 11–15, 114 Cal. Rptr. at 338–41. It further determined

that the tenants held a "status by entitlement" in their leases, requiring due process protection for termination. *Id.* at 15, 114 Cal.Rptr. at 341. It further found that because the landlord in *Korda* had received rental supplements directly from the government, there was a further basis for finding governmental action. *Id.* at 17, 114 Cal.Rptr. at 342–43. In the present case, this court has already determined that governmental action is involved in the Section 8 HAP program.

The court then considered the due process protections to which the tenants were entitled. It first held that the tenants' defenses related to the "right to possession" and were properly raised. *Id.* at 18, 114 Cal.Rptr. at 343. The court then stated regarding the requisite due process:

> The best procedural due process in such cases would be (1) a written notice from landlord to tenant setting forth the facts claimed to constitute good cause for eviction and (2) pleading and proof of those facts in the subsequent unlawful detainer action. This is the procedure recommended by a number of the courts considering the problem.

*Id.* at 19, 114 Cal.Rptr. at 344.

Although that language might appear to be precatory rather than mandatory, subsequent California courts interpreting that language have held that a thirty day good cause notice is required under California law in situations involving governmental action. For example, in *Highland Plastics, Inc. v. Enders,* 109 Cal.App.3d Supp. 1, 167 Cal.Rptr. 353 (1980), the same court characterized its decision in *Appel v. Beyer* as holding that:

> because tenants in a government sponsored subsidized housing project had a "status of entitlement," a species of property protected by constitutional guarantees of due process of law, those tenants must be given special notices of termination setting forth facts claimed to constitute good cause for eviction.

*Id.* 39 Cal.App.3d Supp. at 13, 167 Cal.Rptr. at 360.

Similarly, in *People v. Lucero*, 114 Cal. App.3d 166, 170 Cal.Rptr. 554 (1980), the court of appeals characterized *Appel v. Beyer* as creating an "exception" to the general rule that a landlord may terminate a month to month tenancy under California Civil Code § 1946 by merely giving a thirty day termination notice. That court noted that a landlord ordinarily needs no specific reasons in order to terminate a tenancy, and then said:

> Several exceptions to this general rule have been created by case and statutory law of this state. The broadest departure is in relation to government subsidized housing for low and moderate families. In *Appel v. Beyer* ... the Appellate Department of the Los Angeles Superior Court held that tenants in housing projects financed under the Housing and Urban Development Act ... had a property interest requiring notice of good cause and proof thereof at a hearing before their month-to-month tenancies were terminated. The court relied upon several federal decisions imposing such requirement to carry out the policy of the act to provide affordable housing for low and moderate income families.

*Id.* at 173–74, 170 Cal.Rptr. at 558.

The California Supreme Court has also cited *Appel v. Beyer* as established law. In *California Housing Finance Agency v. Elliott*, 17 Cal.3d 575, 551 P.2d 1193, 131 Cal.Rptr. 361 (1976) (en banc) the court noted that:

> The role of the Agency in the program before us is very similar to that of the federal government in the housing program considered in *Appel v. Beyer*.... In *Appel*, it was held that the federal government's involvement constituted "state action" necessitating compliance with certain due process requirements before tenants could be evicted.

*Id.* at 591, 551 P.2d at 1202, 131 Cal.Rptr. at 370.

No other relevant cases are reported in California, and there is nothing in California law to suggest that they above cases are not still controlling.

This opinion has already concluded above that governmental action is involved in this case, and the governmental action under Section 8's existing housing program is essentially similar to that involved in the reported California state court cases. This court therefore finds that the California Supreme Court would, if confronted with the issue, continue to endorse the above decisions and would hold that under California law these plaintiffs are entitled to a thirty day notice of termination which includes a statement of the reasons for good cause. Under California law, landlords participating in Section 8 HAP leases must therefore issue a good cause notice of termination at least thirty days prior to termination of a month to month tenancy, with a statement of the reasons for termination.

Because of these decisions under state law, the court need not consider plaintiffs' other claims under federal law or the U.S. Constitution.

IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' motion for summary judgment is granted and defendants' motions for summary judgment are denied.

2. Plaintiffs are entitled to a judgment declaring that landlords under Section 8 HAP program housing in California are required, in order to terminate a lease, to give the tenants thirty days notice of the termination with a statement of the reasons constituting the good cause for the termination.

3. The parties are to meet and confer regarding the proposed form of judgment to be entered. If the parties cannot agree on the form, they are to appear on July 24, 1986 at 2:30 p.m. for this court to decide the form of judgment to be entered.