**Mary ANAST, Plaintiff,**

v.

**COMMONWEALTH APARTMENTS, a Limited Partnership; A & R Katz Management, Inc., an Illinois corporation; and Lee Rogers, Defendants.**

No. 95 C 7032.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1997.

Mark Joseph Heyrman, John A. Knight, Mandel Legal Aid Clinic, Chicago, IL, John James Kakacek, John Lingner, III, Kakacek & Lingner, Chicago, IL, for Mary Anast.

Irving M. Geslewitz, Much Shelist Freed Denenberg Ament Bell & Rubenstein, P.C., Chicago, IL, for Commonwealth Apartments.

Penny T. Brown, Much Shelist Freed Denenberg Ament Bell & Rubenstein, P.C., Chicago, IL, for A&R Katz Management, Inc. and Lee Rogers.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

On December 12, 1995, Plaintiff Mary Anast ("Anast") filed a six-count complaint against Defendants Commonwealth Apartments, A & R Katz Management, Inc., and Lee Rogers. Plaintiff alleges that defendants deprived her of her due process rights, breached their lease agreement, violated the Consumer Fraud and Deceptive Business Practices Act, the Fair Housing Act and Rehabilitation Act, and intentionally caused plaintiff to suffer severe emotional distress. Defendants move this court to dismiss plaintiff's complaint under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion is granted in part and denied in part.

### Background

The following facts are taken from the complaint. Defendant A & R Katz Management ("Katz"), Inc. has a contract with defendant Commonwealth Apartments ("Commonwealth") to operate the apartments. Defendant Lee Rogers ("Rogers") was employed by Commonwealth and/or Katz as a building manager for Commonwealth Apartments.

On July 14, 1992, plaintiff entered into a lease with Commonwealth and Draper and Kramer, Inc., the predecessors of defendant Katz for apartment 1013 at the Common-

wealth Apartments located at 2757 North Pine Grove Avenue, Chicago, Illinois 60614. Soon after plaintiff signed the lease, defendant Katz assumed the lease agreement from Draper and Kramer. According to the lease, the total monthly rent for the unit was $567. Under the lease, pursuant to HUD Regulations, plaintiff paid $117 per month and HUD paid the balance, $450, of the total rent for the unit directly to Commonwealth in the form of a monthly Housing Assistance.

Plaintiff suffered from mental illness during her tenancy. Ms. Rogers called the police because of plaintiff's mental illness. On four occasions, plaintiff was hospitalized as a result of Ms. Rogers' call to the police. On or about November 8, 1993, defendant sent a letter dated November 8th to plaintiff which stated, in part: "Consider this your thirty-day notice before enforcing a written thirty-day notice to vacate." Plaintiff never received a five-day notice for non-payment of rent, a notice to quit, or any other notice of termination.

On December 1, 1993, Commonwealth and Katz filed a forcible entry and detainer complaint against plaintiff for possession of her apartment and $240 in damages, the equivalent of two months' rent. On December 7, 1993, plaintiff was personally served with a Summons for Trial requiring her appearance in the Forcible Entry and Detainer Court at 2:00 p.m. on December 17, 1993. However, as of December 10, 1993, plaintiff was rehospitalized after Ms. Rogers placed another phone call to the police. Plaintiff remained hospitalized till January 2, 1994.

On December 17, 1993, plaintiff was not able to appear in the Forcible Court. The attorney for the defendants told the presiding judge that Katz and Commonwealth's complaint was based on plaintiff's non-payment of rent and plaintiff had been served with a "five-day notice". The judge then entered a default judgment for possession and $240 plus costs in favor of Commonwealth and Katz.

After Rogers placed another phone call to the police, plaintiff was re-hospitalized on January 10, 1994 and remained hospitalized till April 11, 1994. On February 18, 1994, the Sheriff's Office of Cook County executed

the default judgment against plaintiff by entering her apartment, removing all of her possessions, and depositing them on the street in front of the building. On March 1, 1994, defendants rented plaintiff's apartment to a new tenant.

On June 24, 1994, after being released from the hospital, plaintiff filed a combined motion to void the default judgment, or in the alternative, a petition to vacate the default judgment in the same Forcible court which entered the December 17th judgment. On January 25, 1995, the Forcible court granted plaintiff's petition to vacate the default judgment and dismissed defendants' complaint for possession of plaintiff's apartment.

### Motion to Dismiss

Defendants move this court to dismiss the complaint of plaintiff Anast under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1406 (N.D.Ill.1996)(citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990)). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir.1996) (citation omitted). The court will dismiss a claim only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Colfax,* 79 F.3d at 632 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

1. The Forcible Court's order reads:
   This matter coming on to be heard for status, the parties appearing by their respective counsel and the Court being advised, it is hereby ordered:
   1) The Defendant's Section 2–1401 petition to vacate judgment for possession and rents previously entered is allowed; however, the Court is of the opinion that the execution on the order for possession by the sheriff was proper and did not amount to a wrongful eviction;

### Discussion

## I. RES JUDICATA

■ The threshold issue before the court is whether the Forcible court's decision [1] that the issue of possession of the subject premises is moot is entitled to res judicata effect. For res judicata to apply in federal court, three requirements must be met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits. *Golden v. Barenborg,* 53 F.3d 866, 869 (7th Cir.1995).

■ For the first requirement, a cause of action consists of a "single core of operative facts" which give rise to a remedy. *Id.* Therefore, the court must determine whether the facts that gave rise to the first suit, are the same core facts that now give rise to the present suit. In the first suit, while Anast was being hospitalized for mental illness, Commonwealth and Katz obtained a default judgment in Forcible court against Anast for possession of her apartment. Defendants sought possession of the partially subsidized apartment that plaintiff was occupying because she had not paid her rent. As a result of that judgement, plaintiff was evicted from her apartment. The sheriff enforced the default judgment against her and she lost all of her possessions and became homeless. Based on these facts, Anast now seeks to recover damages for defendants' acts in obtaining the default judgment against her.

The second requirement of res judicata—identity of the parties—is also satisfied. In the first suit, defendants sued plaintiff to obtain a default judgment against her for possession of the apartment. In the present suit, Anast sues defendants for their conduct in seeking this default judgment.

2) *The Court being advised that there is another tenant presently in possession of the subject premises, the Court finds that the issue of possession to the subject premises is moot and accordingly dismisses the possession count with prejudice;*
3) Plaintiff's motion to voluntarily dismiss the money count is allowed.
*Commonwealth Apartments v. Anast,* No. 93 M1 736391, (Cir. Court of Cook County, Municipal Dep't. Jan. 23, 1995) (emphasis added).

■ However, the third requirement, final judgment on the merits, is not satisfied. In Illinois, the term "merits" has been defined as "the real or substantial grounds of [an] action or defense as distinguished from matters of practice, procedure, jurisdiction, or form." *Johnson v. DuPage Airport Authority*, 268 Ill.App.3d 409, 206 Ill.Dec. 34, 40, 644 N.E.2d 802, 808 (1994). In *Johnson*, taxpayers filed a complaint for an injunction against the defendants for providing free transportation service to certain public officials. They sought an injunction to prohibit the defendants from providing such free service. On September 15, 1993, the defendants adopted a resolution prohibiting free transportation. On September 22, 1993 the defendants filed a motion to dismiss the suit as moot because of the resolution. A hearing was held on the motion to dismiss. The court granted defendant's motion to dismiss and dismissed the suit with prejudice. Later that day, plaintiffs filed a new complaint against the defendants. This new complaint sought an accounting of those individuals who received free transportation services. Defendants then filed a motion to dismiss. The defendants maintained that res judicata should bar the second suit because the first suit was dismissed as moot and with prejudice. "A matter is moot if an actual controversy no longer exists and the interests or rights of parties are no longer in controversy." *Id.*, 206 Ill.Dec. at 40, 644 N.E.2d at 808. The court found that although the case was dismissed with prejudice, indicating that the dismissal was on the merits, because the cause was deemed moot, it has no res judicata effect since there was no judgment on the merits. *Id.* The law of Illinois is clear that a cause deemed moot will not be res judicata, since there is no judgment on the merits. *Id.* (citing *LaSalle National Bank v. City of Chicago*, 3 Ill.2d 375, 121 N.E.2d 486 (1954)).

■ In this case, the Forcible court's order finding that the issue of possession of the premises is moot and dismissed with prejudice is also not entitled to res judicata effect. Even though the possession count was dismissed with prejudice, indicating a dismissal on the merits, the dismissal actually was not on the merits. A cause deemed moot will not be res judicata, since there is no judgment on

the merits. Therefore, defendants motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

## II. 5th Amendment Due Process Claim

The issues raised by plaintiff's 5th Amendment due process clause claim are two-fold: (1) whether thee is a sufficient nexus between defendants and the federal government to constitute state action to trigger the 5th Amendment due process protections: and (2) if so, whether the government's administrative and fiscal interests outweigh the individual's interests at stake.

■ As a general matter, the 5th Amendment due process clause applies only to action taken by the federal government. *Eftekhara v. Illinois Department of Children and Family Services*, 661 F.Supp. 522, 526 (N.D.Ill.1987); *Brown v. Lynn*, 385 F.Supp. 986, 992 (1974). However, courts have applied the 5th Amendment due process clause to private individuals when the private individuals have made "use of state procedures with the overt, significant assistance of state officials." *Tulsa Professional Collection Services. Inc. v. Pope*, 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988).

■ In determining whether a private individual's action constitutes state action, courts have looked to the level of government involvement in the private individual's actions. First, "[t]he complaining party must ... show that 'there is a sufficiently close nexus' between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." ' *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (quoting *Jackson v, Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Id.* at 1004, 102 S.Ct. at 2786 (quoting *Jackson*, 419 U.S. at 350, 95 S.Ct. at 453); *Gallman v. Pierce*, 639 F.Supp. 472, 481 (N.D.Cal.1986). Second, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such signifi-

cant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2786; *Gallman,* 639 F.Supp. at 481; *Brown,* 385 F.Supp. at 992.

In *Gallman v. Pierce,* tenants who participated in a federally subsidized housing program challenged the attempted termination of their tenancies. The plaintiffs charged the defendants with violations of their due process rights under the 5th and 14th amendments. The defendants claimed that there was insufficient governmental action to make this controversy other than a private dispute. *Gallman,* 639 F.Supp. at 480. Applying the factor test established in *Blum,* the court found that state action exists. In addition to the relevant statutes and regulations viewed in their entirety, the court found that HUD and the PHA significantly encouraged the conduct that the plaintiffs challenged. *Id.*

Similarly, in *Lattimore v. Northwest Cooperative Homes Association,* No. 90–0049(RCL), 1992 WL 118383 (D.D.C May 19, 1992), the plaintiff challenged the termination of her federal housing assistance benefits under theories of violation of her due process rights and breach of contract. Once again HUD argued that there was no federal action to support the claim because HUD did not coerce the Cooperative or individual defendants to take the actions they did. *Id.* at *7. Distinguishing the case from *Blum,* the court found that plaintiff alleged some federal action taken by HUD. In addition to federal funding and regulation, the individual defendants are HUD's agent in making certification decisions under the Section 8 program. *Id.* The court held that plaintiff satisfied the required nexus test under *Blum* and denied HUD's motion to dismiss. *Id.*

Finally, in *Brown v. Lynn,* the plaintiffs were suing mortgagee defendants and federal defendants for instituting foreclosure proceedings against the plaintiffs without adequate prior notice or an opportunity for a preliminary hearing in violation of their 5th Amendment due process rights and other contractual rights. *Brown,* 385 F.Supp. at 988. The court found that "the interdependency between the government and the mortgagees here presents a classic example of the type of relationship which requires extending such coverage." *Id.* at 992. The court focused on the the the incentive structure established by the government for the mortgagees, the ongoing regulatory framework, once the mortgagees agreed to participate in the programs, and finally, the overall symbiotic nature of the relationship. *Id.* The court looked to "the rather elaborate regulatory scheme by which the government provides incentives and protections to induce the mortgagees to enter into these essentially risk free mortgage contracts. But for the provisions of these federal programs, with their guaranteed insurance and assistance payment subsidies, the mortgages in question probably would never have come into existence. Government influence is further reflected in the contractual and regulation which the mortgagees are subjected to when they become participants in these programs." *Id.* The court found that "the mortgagees are inextricably intertwined in the dispensing of these government conceived and controlled benefits. The programs depend upon the mortgagees to supply the end product, and the mortgagees rely on the government to protect their investment.... Accordingly, the mortgagees necessarily must be subject to the same constitutional protections as the government, which means, where applicable, meeting the due process requirements of the 5th Amendment." *Id.* at 993.

Construing the pleadings and all reasonable inferences which derive therefrom in favor of plaintiff, the court finds that plaintiff has sufficiently plead the requisite state action. Plaintiff alleges that defendants acted under color of federal law or authority. First, plaintiff alleges that defendants participated in the Section 8 Substantial Rehabilitation Program.[2] (Compl. at ¶ 9.) Commonwealth received federal support, specifically, federal rent subsidies for Commonwealth Apartments under the Section 8 Rehabilita-

---

**2.** The purpose of the Section 8 program is to provide low-income families with decent, safe and sanitary rental housing through the use of a system of housing assistance payments. The as-

sistance may be provided to public housing agency owners or to private owners either directly from HUD or through public housing agencies. 24 C.F.R. § 881.101 (1996).

tion Program. (Compl. at ¶¶ 9, 37.) Tenants pay a portion of the monthly rent and HUD pays the balance directly to the project owner. (Compl. at ¶ 11.) Secondly, plaintiff alleges that defendants were subject to the regulatory framework established by the government. Specifically, Commonwealth is required to comply with all federal regulations governing Section 8 housing setting forth eligibility for housing units and the procedures necessary to terminate the tenancies. (Compl. at ¶ 10.) Additionally, defendants were in communication with HUD about plaintiff and sought advice about what to do with her as a tenant. (Resp. Br. at 4–5, Exh. A.)

Plaintiff has sufficiently described a symbiotic relationship between defendants and the federal government to satisfy the threshold requirement of state action for the protections of the 5th Amendment Due Process clause.

■ Next, the court must determine whether plaintiff has pled what interests of hers are at stake due to defendants conduct. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that when an individual had a statutory entitlement to welfare benefits, that welfare recipient was entitled to an evidentiary hearings before suspension of their benefits. *Id.* The court based its decision on the fact that the consequences to the recipient of wrongful termination outweighed the governmental interest in conserving fiscal resources through summary action. *Id.* at 264, 90 S.Ct. at 1018–19. Courts apply a balancing test to determine whether the individual recipient is entitled to an evidentiary hearing before being deprived of their benefits. While considering the government's administrative and fiscal interests, "courts must pay particular attention not only to the nature of the individual's interests at stake but also the extent to which the individual faces imminent loss or injury." *Brown*, 385 F.Supp. at 996; *Ferguson v. Metropolitan Development and Housing Agency*, 485 F.Supp. 517, 521 (M.D.Tenn.1980)("In contrast to administrative economy and efficiency, the more variable factor in determining due process requirements is the private interest. ")

In *Brown*, the court found that suspending plaintiff's mortgage assistance payments had no practical impact on either the mortgagor's continued physical presence in their homes or their financial obligations arising out of the foreclosure proceedings. In Illinois, mortgagors found to be in default may be permitted to remain in their homes as long as 15 months after the entry of the foreclosure decree. The court highlighted the fact that the mortgagors were not faced with instant homelessness. Therefore, the court held that procedural safeguards are unnecessary to preserve the mortgagors' physical well-being. *Id.* at 997.

Courts, following the guidance *Goldberg*, have held that in the case of public housing, as in the case of welfare benefits, a pretermination hearing must be held before eviction from public housing projects. Improper denial of the benefit cannot be corrected easily at a later date, therefore, due process protection must be afforded. *Caulder v. Durham Housing Auth.*, 433 F.2d 998 (4th Cir.1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971); *Escalera v, New York City Housing Auth.*, 425 F.2d 853 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

■ Therefore, applying the principles set forth in *Goldberg*, this court finds that plaintiff sufficiently alleged imminent loss. Plaintiff lost her subsidized housing unit, her housing subsidy, her personal possessions, and was rendered homeless. (Compl. at ¶¶ 30–33, 40.) The nature of plaintiff's interests sufficiently outweigh the government's administrative and fiscal interests in a summary disposition of the case. The court finds that plaintiff has set forth facts in the complaint which would entitle her to relief and therefore, denies defendants' motion to dismiss as to count I.

### III. Fair Housing Act and Rehabilitation Act

■ Section 794 of the Rehabilitation Act ("Rehab Act") provides, in relevant part, that

no otherwise qualified individual with a disability in the United States ... shall,

solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a)(1996). The Rehab Act defines "qualified individual with a disability" as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). The Rehab Act provides a private right of action where an individual alleges and proves discrimination based on a handicap. *Roe v. Housing Authority of the City of Boulder*, 909 F.Supp. 814, 820 (D.Co. 1995).

■ To prove a violation of the Rehab Act, plaintiff must prove that she is (1) a "qualified individual" under the Act; (2) is "otherwise qualified" for the benefit, program, or activity; (3) was excluded from the program solely by reason of his/her handicap; and (4) the program or activity receives federal financial assistance. *Roe*, 909 F.Supp. at 820.

Section 3604 of the Fair Housing Act ("FHA") provides, in relevant part, that it shall be unlawful

[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—that buyer or renter .... [and][t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person.

42 U.S.C. § 3604(f)(1)-(2) (1994). A handicap is defined as "a physical or mental impairment which substanitally limits one or more of such person's major life activities, record of having such impairment, or being regarded as having such impairment". 42 U.S.C. § 3602(h) (1994). The goal behind these provisions of the FHA is to "eliminate discrimination against and equalize housing opportunities for disabled individuals." *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir.1995).

■ To prove a violation of the FHA, plaintiff must prove that a defendant (1) discriminated against plaintiff in the terms, conditions, or privileges of sale or rental of a dwelling; or (2) in the provision of services or facilities in connection with such dwelling; (3) because of such handicap of that person. *Roe*, 909 F.Supp. at 820. A plaintiff can prove a violation of the FHA by showing intentional discrimination, discriminatory impact, or refusal to make reasonable accommodations. *Id.* In the context of reasonable accommodations, it is discriminatory when a party refuses to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to the use and enjoyment of the dwelling. *Id.* at 820–21.[3]

Both the Rehab Act and FHA were designed to eradicate discrimination against handicapped individuals. Both "Acts also require reasonable accomodation of an individual's disability or handicap". *Id.* at 821; *See also Stephenson v. Ridgewood Village Apartments*, No. 1:93–CV–614, 1994 WL 792581, \*2 (W.D.Mich. Nov.10, 1994) ("Cases interpreting the term 'reasonable accomodation' under the Rehabilitation Act also apply to claims under the FHA.") Therefore, because the Rehab Act and FHA share very similar goals, this court will analyze the FHA and Rehab Act claims together.

---

**3.** In the context of intentional discrimination, courts have used the traditional burden-shifting approach set forth in *McDonnell Douglas*. *Stephenson*, No. 1:93–CV–614, 1994 WL 792581, \*3. To establish a prima facie case under this approach, courts have required that plaintiff allege she is handicapped, defendants were aware of this handicap, defendants were ready and able to accept plaintiff's offer to rent, and finally, defen-dants refused to deal with plaintiff. Then the burden shifts to defendants to show that they acted without discriminatory intent. *Valenti v. Salz*, No. 94 C 7053, 1995 WL 417547, \*3 (N.D.Ill. July 13, 1995). Then the plaintiff may challenge defendants alleged nondiscriminatory reason for its action as pretextual. *Stephenson*, No. 1:93–CV–614, 1994 792581, \*3.

■ In determining what constitutes a reasonable accommodation, the court recognizes that "the requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Bronk*, 54 F.3d at 429; *See also Stephenson*, No. 1:93–CV–614, 1994 WL 792581, *2 (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) ("An accommodation is reasonable if it neither requires a 'fundamental alteration in the nature of a program', nor imposes 'undue financial and administrative burdens.' ")). Therefore, plaintiff must show that the desired accommodation will affirmatively improve a disabled plaintiff's quality of life by ameliorating the effects of the disability. *Bronk*, 54 F.3d at 429.

■ Plaintiff has established that she is handicapped or a qualified individual with a disability. Plaintiff has been diagnosed with mental illness and has been hospitalized on more than one occasion. (Compl. at ¶ 17.) Her handicap substantially limited her ability to work and to care for herself. (Compl. at ¶ 66.) Specifically, plaintiff's mental illness prevented her from adequately defending herself against Commonwealth's complaint for possession. She was mentally ill when the summons was served on her and hospitalized during the hearing on the complaint. (Compl. at ¶ 68.) Plaintiff alleges that defendants were aware of her mental condition. (Compl. at ¶ 67.)

Otherwise qualified to be a tenant at Commonwealth Apartments and participate in the Section 8 program (Compl. at ¶ 77.), plaintiff alleges that defendants discriminated against her in violation of both the Rehab Act and FHA by not reasonably accommodating her. Plaintiff sets forth two instances where defendants failed to reasonably accommodate her disability. First, she alleges that defendants had a prior practice of accepting late payments; however, they did not extend this policy to her and, subsequently, had her evicted. (Compl. at ¶¶ 74, 75, and 79.) Plaintiff contends that the reason defendants refused to accommodate plaintiff by accepting her late payment of rent was because of her disability. To determine whether accepting a late rent payment constitutes a reasonable accommodation, courts generally undertake a cost-benefit analysis. *Bronk*, 54 F.3d at 429; *See also Stephenson*, No. 1:93–CV–614, 1994 WL 792581, *1, 5 (Plaintiff-tenant suffered with mental illness and repeatedly failed to pay her rent. Defendants notified plaintiff they were terminating her tenancy. After discovering plaintiff suffered from a mental illness, defendants gave plaintiff an additional five days to move out, which she failed to do. The court found that plaintiff has not demonstrated that defendants failed to make any reasonable accommodations that were necessary because of her handicap.) However, in this case, the court does not have to make this cost-benefit assessment because the court finds that plaintiff's second allegation that defendants did not reasonably accommodate her sufficient to withstand defendants' motion to dismiss.

■ Plaintiff also alleges that defendants did not postpone the eviction hearing until she was out of the hospital and able to understand the proceedings. (Compl. at ¶¶ 68, 69.) Plaintiff contends that postponing the eviction hearing would have constituted a reasonable accommodation in Commonwealth's rules, policies, or practices which was necessary to afford her an equal opportunity to use and enjoy her apartment. (Compl. at ¶ 71.) The court finds that plaintiff has sufficiently pled that defendants have discriminated against her in the terms, conditions, or privileges of rental of a dwelling because of her handicap.

The court finds that plaintiff has sufficiently pled facts in support of her FHA and Rehab Act claims and therefore, deny defendants' motion to dismiss as to both these Counts.

## IV. Consumer Fraud Act Claim

The issue before the court is whether the complaint states a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act" or "Act"), 815 ILCS § 505 et seq. Section 2 of the Consumer Fraud Act provides that:

deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS § 505/2 (West 1996). Section 11a of the Consumer Fraud Act provides that it shall be liberally construed to effect its purpose. 815 ILCS § 505/11a.

In order to state a claim under the Consumer Fraud Act, plaintiff must allege (1) a deceptive act or unfair practice; (2) an intent on the defendant's part that plaintiff rely on the deception, and (3) that the deception occurred during trade or commerce. *Saunders v. Michigan Avenue National Bank,* 278 Ill.App.3d 307, 214 Ill.Dec. 1036, 1041, 662 N.E.2d 602, 607 (1996); *Garcia v. Overland Bond & Investment Company,* 282 Ill.App.3d 486, 218 Ill.Dec. 36, 668 N.E.2d 199 (1996). A consumer fraud claim "must be pleaded with the same specificity that has always been a prerequisite to an action for common law fraud." *Shea v. Preservation Chicago, Inc.,* 206 Ill.App.3d 657, 151 Ill.Dec. 749, 756, 565 N.E.2d 20, 27 (1990).

Courts have applied the Consumer Fraud Act to the landlord-tenant relationship. *Carter v. Mueller,* 120 Ill.App.3d 314, 75 Ill.Dec. 776, 782, 457 N.E.2d 1335, 1341 (1983); *People ex rel. Fahner v. Testa,* 112 Ill.App.3d 834, 68 Ill.Dec. 396, 399, 445 N.E.2d 1249, 1252 (1983); *People ex rel. Fahner v. Hedrich,* 108 Ill.App.3d 83, 63 Ill.Dec. 782, 785, 438 N.E.2d 924, 927 (1982). Having alleged that defendants were engaged in trade or commerce and intended that plaintiff rely on their actions (Compl. at ¶ 58.), the issue the court must address is whether defendants' conduct was deceptive or unfair. The terms "deceptive practice" or "unfair act" must be defined on a case-by-case basis.

*People ex rel. Fahner v. Testa,* 68 Ill.Dec. at 399, 445 N.E.2d at 1252.

In *Testa,* the plaintiff, a mobile-home tenant, alleged that defendant told him that the tenants could not sell their homes unless the homes were removed from the village after sale. *Id.* 68 Ill.Dec. at 397, 445 N.E.2d at 1250. Defendant attempted to evict certain tenants and purchasers of homes of former tenants and denied leases to potential purchasers. *Id.* Plaintiff alleged that defendant's acts were unfair or deceptive and wanted defendant to be required to notify tenants of their right to sell their homes and not face eviction. *Id.* 68 Ill.Dec. at 398, 445 N.E.2d at 1251. The court held, based on these facts, that the plaintiff sufficiently alleged an unfair or deceptive act or practice. *Id.* 68 Ill.Dec. at 399, 445 N.E.2d at 1252.

Similarly, in the case before us, plaintiff alleges that defendant's filing of a complaint for possession without notice concealed the fact that they were terminating her lease and the basis for the eviction. Defendants contend that plaintiff's allegations do not rise to the level of an unfair or deceptive act, rather these allegations only form the basis for her breach of contract claim. However, following the guidance of the Illinois Appellate Court, the court holds that, on these facts, plaintiff has alleged an unfair or deceptive act or practice under Section 2 of the Consumer Fraud Act.

## V. Intentional Infliction of Emotional Distress

In order to state a cause of action under Illinois law for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Kur v. Fox Valley Press, Inc.,* No. 96 C 3685, 1996 WL 715543, *2 (N.D.Ill.Dec.6, 1996) (citation omitted); *Hayes v. Illinois Power Company,* 225 Ill.

App.3d 819, 167 Ill.Dec. 290, 294, 587 N.E.2d 559, 563 (1992).

The question before the court is whether defendants' conduct was "extreme and outrageous". The threshold for extreme and outrageous conduct is high. Conduct is extreme and outrageous when reciting the facts to an average community member would arouse her resentment against the actor, and lead her to exclaim, "outrageous!". *Carr v. Village of Richmond,* No. 96 C 50203, 1996 WL 663921, *7 (N.D.Ill. Nov.15, 1996). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities that are part of the costs of complex society from which the law provides no protection. *Id.* "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice'... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Finance Corporation v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976); *Harriston v. Chicago Tribune Company,* 992 F.2d 697, 702 (7th Cir. 1993).

Incorporating the allegations made throughout the complaint, plaintiff claims that defendants' conduct was extreme and outrageous. (Compl. at ¶ 82). Plaintiff argues that the nature of her eviction, defendant's policy of accepting late payments, except from her, and her hospitalization during the eviction clearly rise to the level of the extreme and outrageous. (Pl's Resp. Brief. at 9) While the court recognizes that this sequence of events were most unfortunate for the plaintiff, the court finds, however, that defendants' conduct does not rise to the level of extreme and outrageous. Plaintiff has not sufficiently pled the first element of this tort. Therefore, defendants' motion to dismiss is granted as to this count.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied as to Count I (5th Amendment Due Process Claim), III (Consumer Fraud Act Claim), IV and V (Fair Housing Act and Rehabilitation Act Claims) and granted as to Count VI (Intentional Infliction of Emotional Distress Claim). The parties are instructed to discuss settlement before the next court appearance in this case.