**Patricia RUPPEL, Plaintiff,**

v.

**Bruce RAMSEYER, Van Clayton Tedrick, John Peterson, M.D., and Covenant Medical Center of Champaign/Urbana, Defendants.**

No. 98–CV–2071.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

Jan. 19, 1999.

---

Robert Kirchner, Lerner & Kirchner, Champaign, IL, for Plaintiff.

Marc J. Ansel, Champaign, IL, for Defendant Bruce Ramseyer.

Richard R. Harden, Kenneth D. Reifsteick, Thomas, Mamer & Haughey, Champaign, IL, for Defendants Tedrick, Peterson & Covenant Medical Center.

## ORDER

McCUSKEY, District Judge.

On March 16, 1998, Plaintiff, Patricia Ruppel, filed a 24-count Complaint (# 1) against Defendants: Bruce Ramseyer, a police officer employed by the City of Champaign; Van Clayton Tedrick, a registered nurse employed by Covenant Medical Center; John Peterson, M.D., an emergency room physician at Covenant Medical Center; and Covenant Medical Center of Champaign/Urbana. On July 1, 1998, Defendant Ramseyer filed a Motion to Dismiss (# 5). On July 2, 1998, Defendants Tedrick, Peterson and Covenant Medical Center filed their Motion to Dismiss (# 8). A Report and Recommendation was filed by the Magistrate Judge in the above cause on October 14, 1998. The Magistrate Judge recommended that Defendants' Motions to Dismiss be denied in part and the proceedings stayed with respect to the determination of probable cause. On October 27, 1998, Defendants Tedrick, Peterson and Covenant Medical Center filed an Objection to the Magistrate Judge's Report and Recommendation.

A district court must review de novo the recommendations of a Magistrate Judge to which either party timely objects. 28 U.S.C. § 636(b)(1)(C); *Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 1 F.Supp.2d 937, 938 (E.D.Wis. 1998), aff'd. 165 F.3d 1087, 1999 WL 13425 (7th Cir.1999). In addition, the district court may review any other aspect of a recommendation as it sees fit (*Lexington Ins. Co.,* 1 F.Supp.2d at 938), and may make a de novo determination even when no objection was made (*Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986)). This is because, under the statute, the district court always retains the power to make the final decision. *Delgado,* 782 F.2d at 82. Accordingly, even though Defendant Ramseyer did not file an objection to the Report and Recommendation, this court has reviewed all aspects of the Report and Recommendation. This court now adopts the Magistrate Judge's Recommendation in part and rejects it in part.

## FACTS

The following facts are drawn from Plaintiff's complaint. On March 15, 1997, Plaintiff was involved in a traffic accident in Champaign, Illinois. Plaintiff's vehicle hit "a vehicle that had stalled, restarted and began movement, and then stalled again" at an intersection at a time when the stoplight was green for Plaintiff's vehicle. After the accident, Plaintiff insisted that she sustained no injuries. However, she was persuaded to go by ambulance to Covenant Medical Center. She arrived at the emergency room at approximately 9:00 p.m. She declined treatment, but agents and employees of the Medical Center refused to let Plaintiff leave and placed a security guard outside of the treatment room. Defendant Ramseyer arrived at the emergency room between 9:10 and 9:20 p.m. He was informed that Plaintiff had declined treatment and was seeking to leave the Medical Center. Ramseyer then placed Plaintiff under arrest for driving under the influence of alcohol (DUI). According to Plaintiff's complaint, Ramseyer did not have probable cause to arrest Plaintiff.

Ramseyer advised Plaintiff that he was demanding that she undergo a blood test to determine her blood alcohol level. According to Plaintiff's complaint, Ramseyer also informed her that she had a right to refuse such testing subject to the automatic suspension of her driver's license. Plaintiff refused the testing. Ramseyer then ordered Dr. Peterson to draw Plaintiff's blood for testing. Dr. Peterson ordered Tedrick to draw Plaintiff's blood. The blood was drawn at approximately 10:20 p.m. Plaintiff alleged that Dr. Peterson and Tedrick "repeatedly grabbed the Plaintiff's arm" and drew blood from her against her will. Plaintiff was released from the Medical Center at about 10:35 p.m.

Following a jury trial, Plaintiff was found not guilty of the offense of DUI. However, she was found guilty of the offense of driving with a blood alcohol concentration greater than .10.

Based upon these facts, Plaintiff alleged that Defendant Ramseyer was liable for: unlawful seizure for arresting her without probable cause under 42 U.S.C. § 1983 (Count I); unlawful search for the involuntary withdrawal of her blood under 42 U.S.C. § 1983 (Count II); unlawful search for the involuntary withdrawal of her blood in violation of the Illinois Constitution (Count III); unlawful seizure for arresting her without probable cause in violation of the Illinois Constitution (Count IV); ordering that her blood be drawn in violation of her substantive due process rights under 42 U.S.C. § 1983 (Count V); a violation of her right to privacy under the Illinois Constitution (Count VI); intentional infliction of emotional distress (Count VII); and false imprisonment/arrest (Count VIII).

Plaintiff also alleged eight counts against Dr. Peterson, to wit: breach of fiduciary duty (Count IX); unlawful search under 42 U.S.C. § 1983 (Count X); unlawful seizure under 42 U.S.C. § 1983 (Count XI); unlawful search in violation of the Illinois Constitution (Count XII); unlawful seizure in violation of the Illinois Constitution (Count XIII); false imprisonment/arrest (Count XIV); battery (Count XV); and intentional infliction of emotional distress (Count XVI).

In addition, Plaintiff alleged seven counts against Van Clayton Tedrick, the nurse. She alleged: battery (Count XVII); breach of fiduciary duty (Count XVIII); intentional infliction of emotional distress (Count XIX); unlawful seizure under 42 U.S.C. § 1983 (Count XX); unlawful search under 42 U.S.C. § 1983 (Count XXI); unlawful seizure in violation of the Illinois Constitution (Count XXII); and unlawful search in violation of the Illinois Constitution (Count XXIII). Finally, Plaintiff alleged that Covenant Medical Center was liable for false arrest and imprisonment (Count XXIV).

Defendants filed Motions to Dismiss all 24 counts of Plaintiff's complaint.

## ANALYSIS

### I. BACKGROUND

In considering a Motion to Dismiss, all well-pleaded factual allegations in the complaint are taken as true, with the facts viewed in the light most favorable to the plaintiff. Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In this case, the factual basis for all of Plaintiff's claims is that she was unlawfully detained at the Medical Center and forced to undergo a blood test against her will.

In *Schmerber v. State of California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court addressed a claim that the State had breached the Fourth Amendment's protection of the "right of the people to be secure in their persons ... against unreasonable searches and seizures" when it compelled an individual suspected of drunken driving to undergo a blood test. In *Schmerber,* as in this case, the individual was arrested at a hospital after being involved in an automobile accident. *Schmerber,* 384 U.S. at 758, 86 S.Ct. 1826. Also, in *Schmerber,* as in this case, a police officer at the hospital directed a physician to take a blood sample over the individual's objection. *Schmerber,* 384 U.S. at 758–59, 86 S.Ct. 1826. The Court in *Schmerber* found that a blood test is a "search" under the Fourth Amendment. *Schmerber,* 384 U.S. at 767, 86 S.Ct. 1826. However, it held that the search was not unreasonable and did not violate the Fourth Amendment because the police officers had probable cause to believe the individual was driving under the influence of alcohol and because there was no time to seek out a magistrate and secure a warrant as the percentage of alcohol in the blood begins to diminish shortly after drinking stops. *Schmerber,* 384 U.S. at 768–72, 86 S.Ct. 1826. In finding the blood test reasonable, the Court noted that blood tests are "minor intrusions into an individual's body." *Schmerber,* 384 U.S. at 772, 86 S.Ct. 1826. The Court stated that such "tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma,

or pain." *Schmerber*, 384 U.S. at 771, 86 S.Ct. 1826. The Court also noted that the "test was performed in a reasonable manner" as it was taken "in a hospital environment according to accepted medical practices." *Schmerber*, 384 U.S. at 771, 86 S.Ct. 1826.

■■■ *Schmerber* "recognized society's judgment that blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity" (*Winston v. Lee*, 470 U.S. 753, 762, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985)) and "clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test" (*South Dakota v. Neville*, 459 U.S. 553, 559, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983)). A simple blood-alcohol test is so safe, painless and commonplace that a state can legitimately compel the suspect, against his will, to accede to the test. *Neville*, 459 U.S. at 563, 103 S.Ct. 916. Therefore, if a police officer has probable cause to arrest for DUI, he can proceed without use of excessive force in procuring a blood sample even in the face of a suspect's refusal. *Field v. Hall*, 1995 WL 360744, at *6 (D.Del.1995). This court notes that "grabbing" an arm is consistent with "forcing" or "compelling" a person to submit to a blood test and does not constitute excessive force.

Since *Schmerber*, "it is clear that a compulsory test does not violate *any* constitutional rights of an individual merely because he objected to such tests." *People v. Todd*, 59 Ill.2d 534, 322 N.E.2d 447, 453 (1975) (emphasis added); see also *People v. Yant*, 210 Ill.App.3d 961, 155 Ill.Dec. 783, 570 N.E.2d 3, 4 (1991) (a blood test taken without consent does not violate *any* constitutional right of the donor).

Based upon this well established case law, it is clear that Plaintiff has no cause of action based upon the fact that she was forced to submit to a blood test against her will unless she can prove there was no probable cause to believe she was driving under the influence of alcohol. Accordingly, it is clear to this court that, so long as probable cause existed, the taking of Plaintiff's blood did not violate any of her constitutional rights, even though she objected to the blood test and even if Ramseyer told her she could refuse the test.

■■■ In addition, an essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998). In order to prevail in an unlawful arrest action, the plaintiff *must* show lack of probable cause. *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir.1993), cert. denied, 511 U.S. 1082, 114 S.Ct. 1833, 128 L.Ed.2d 461 (1994).

## II. RAMSEYER MOTION TO DISMISS

### A. PROBABLE CAUSE

In his Motion to Dismiss, Defendant Ramseyer argues that Plaintiff is collaterally estopped from denying the existence of probable cause for her arrest. He notes that Plaintiff filed a Motion to Quash Arrest for Lack of Probable Cause in the circuit court of Champaign County. A hearing was held and evidence was heard on August 22, 1997. The circuit judge found that Officer Ramseyer had probable cause to arrest Plaintiff and denied her Motion to Quash Arrest.

■■■ The doctrine of collateral estoppel holds that, once a court has decided an issue of fact or law necessary to its judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Sloan v. Durkin*, 1996 WL 284973, at *4 (N.D.Ill.1996); see also *Guenther v. Holmgreen*, 738 F.2d 879, 883 (7th Cir.1984). A federal court is required to give a judgment of a state court the same collateral effect that the judgment would be given by a state court of the state in which the judgment was rendered. 17 U.S.C. § 1738; *Sloan*, 1996 WL 284973, at *4. As a consequence, determinations made in state criminal trials may estop a criminal defendant from relitigating the same issue in a civil suit. *Sloan*, 1996 WL 284973, at *4. For collateral estoppel to apply, there must have been a final decision of a court of competent jurisdiction, and the party to be estopped must have had a full and fair opportunity to litigate the issue. *Sloan*, 1996 WL 284973, at *4. In *Guenther*, the Seventh Circuit held that a plaintiff was collaterally estopped from alleging that his arrest was made without probable cause when the plain-

tiff had litigated the issue of probable cause at a preliminary hearing in state court and the state court determined that probable cause existed for the arrest. *Guenther,* 738 F.2d at 883–89; see also *Field,* 1995 WL 360744, at *7. The court in *Guenther* specifically stated that the state court's determination of probable cause estopped the plaintiff from raising any Fourteenth Amendment due process claim based upon the general tort theories of false arrest and false imprisonment. *Guenther,* 738 F.2d at 889.

In this case, Plaintiff does not argue that she did not have a full and fair opportunity to litigate the issue of probable cause in the circuit court of Champaign County. Plaintiff argues, however, that collateral estoppel does not apply because she has appealed the circuit court's ruling. The appeal is currently pending in Illinois' Fourth District Appellate Court in *People v. Ruppel,* Case No. 4–98–0411.

■ In Illinois, it is unclear whether a pending appeal destroys the preclusive effect of a judgment. *Rogers v. Desiderio,* 58 F.3d 299, 302 (7th Cir.1995); *Dwyer v. Evoy,* 12 F.Supp.2d 832, 834 (N.D.Ill.1998); *Sloan,* 1996 WL 284973, at *5. In *Rogers,* the Seventh Circuit found that the appropriate action was to stay the case pending a decision by the Illinois Appellate Court and then to proceed as appropriate in light of the final disposition of the state court action. *Rogers,* 58 F.3d at 302. The issue in *Rogers* was claim preclusion (res judicata), and the proceedings were stayed until the conclusion of "parallel" proceedings in state court based upon *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). That is not the precise situation here. The proceeding pending before the Fourth District Appellate Court is not a "parallel" proceeding. However, a final determination by the Illinois Appellate Court that probable cause existed for Plaintiff's arrest clearly would estop Plaintiff from claiming that the arrest was without probable cause in this court. See *Sloan,* 1996 WL 284973, at *6 ("it is a waste of court resources to hold a trial to determine facts already determined in state court"). As a result, this court agrees with the Magistrate

Judge's recommendation that proceedings regarding the counts of Plaintiff's complaint which depend on proof of a lack of probable cause should be stayed pending the decision of the Fourth District Appellate Court on this issue.

This court further concludes that, if the Fourth District Appellate Court affirms the judgment of the circuit court of Champaign County that probable cause existed for Plaintiff's arrest, Plaintiff cannot state claims against Ramseyer based upon unlawful seizure, unlawful search, violation of substantive due process rights, violation of her right to privacy or false imprisonment/arrest. All of these counts must then be dismissed.

This court notes, in passing, that Plaintiff has argued that probable cause was lacking based upon the fact that she was acquitted of the DUI charge following a jury trial. This argument is not persuasive. To secure a conviction, criminal charges must be proved beyond a reasonable doubt. However, an arrest need only be supported by probable cause, facts which would warrant a prudent person in believing that the individual had committed or was committing an offense. *Roby v. Skupien,* 758 F.Supp. 471, 474 (N.D.Ill.1991) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. *Kelley,* 149 F.3d at 646. Therefore, "even though the criminal charges could not be proved at trial, the officer could still have been acting constitutionally, pursuant to his lesser burden, when he performed his actions during the investigation." *Roby,* 758 F.Supp. at 474; see also *Kelley,* 149 F.3d at 647 (fact that plaintiff not actually convicted does not mean there was not probable cause for her arrest).

In addition, Plaintiff cannot necessarily prevail on her claims even if it is determined that no probable cause existed for her arrest. If a reasonable officer would have believed that probable cause existed to arrest Plaintiff for DUI, the officer is entitled to qualified immunity. *Kelley,* 149 F.3d at 648; *Edwards v. Cabrera,* 58 F.3d 290, 293 (7th Cir.1995).

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

█ Officer Ramseyer also argues that Count VII fails to state a claim for intentional infliction of emotional distress under Illinois law because the alleged conduct is not sufficiently extreme and outrageous to be actionable under Illinois law. This court agrees.

█ In order to state a cause of action under Illinois law for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew there was a high probability that the conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Anast v. Commonwealth Apartments*, 956 F.Supp. 792, 802–03 (N.D.Ill.1997). The threshold for extreme and outrageous conduct is high. *Anast*, 956 F.Supp. at 803. Conduct is extreme and outrageous only when reciting the facts to an average community member would arouse her resentment against the actor, and lead her to exclaim, "outrageous!" *Anast*, 956 F.Supp. at 803. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities that are part of the costs of complex society from which the law provides no protection. *Anast*, 956 F.Supp. at 803. Liability has been found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency. *Anast*, 956 F.Supp. at 803. The law intervenes only when the distress inflicted. is so severe no reasonable person could be expected to endure it. *Whitehead v. AM Int'l, Inc.*, 860 F.Supp. 1280, 1291 (N.D.Ill.1994). The facts of each case are judged by an objective standard to determine whether the alleged conduct was extreme and outrageous. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). When the allegations of a plaintiff's complaint do not meet the high threshold necessary to state a cause of action for intentional infliction of emotional distress, dismissal is proper. See *Harriston*, 992 F.2d at 703; *Anast*, 956 F.Supp. at 803; *White-head*, 860 F.Supp. at 1290–91; *Khan v. American Airlines*, 266 Ill.App.3d 726, 203 Ill.Dec. 171, 639 N.E.2d 210, 215 (1994); *Miller v. Equitable Life Assurance Society*, 181 Ill.App.3d 954, 130 Ill.Dec. 558, 537 N.E.2d 887, 889–90 (1989).

In this case, Plaintiff's factual allegations are that she was detained at the Medical Center from approximately 9:00 p.m. to 10:35 p.m., even though she was refusing treatment. In addition, Plaintiff alleged that a blood test was taken against her will and by "repeatedly grabb[ing] the Plaintiff's arm."

This court concludes that, even assuming that Plaintiff was arrested and detained without probable cause, Plaintiff's allegations do not reach the level of extreme and outrageous conduct needed to establish a claim for intentional infliction of emotional distress. In doing so, this court again recognizes that the Supreme Court in *Schmerber* stated that blood tests are "minor intrusions" and stated in *Winston* that, in society's judgment, blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity. In addition, a detention of approximately 1½ hours at a Medical Center cannot be considered outrageous and extreme under the circumstances here where Plaintiff was involved in an automobile accident and agreed to be taken to the Medical Center. Accordingly, this court finds that the conduct of Ramseyer, and the other Defendants, was not so severe that a reasonable person could not be expected to endure it, and did not go beyond all possible bounds of decency. See *Harriston*, 992 F.2d at 703. As a result, Count VII is dismissed.

## III. MEDICAL CENTER DEFENDANTS' MOTION TO DISMISS

In their Motion to Dismiss, Defendants Peterson, Tedrick and Covenant Medical Center argue: (1) that the § 1983 claims against Peterson and Tedrick must be dismissed because they are private individuals and not state actors; (2) that all of the counts based upon Illinois law must be dismissed because the actions of Peterson and Tedrick were authorized by Illinois statute (625 Ill. Comp. Stat. 5/11–501.2 (West 1996); (3) the

state law claims must be dismissed because Illinois provides by statute for civil immunities for Defendants' conduct (625 Ill. Comp. Stat. 5/11–500.1); (4) the state law claims must be dismissed because Plaintiff failed to file an affidavit as required by 735 Ill. Comp. Stat. 5/2–622 (West 1996)); (5) the claims for breach of fiduciary duty must be dismissed because no fiduciary duty existed based upon the facts plead; and (6) Plaintiff failed to state a cause of action for intentional infliction of emotional distress.

### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

For the reasons just discussed in considering Defendant Ramseyer's Motion to Dismiss, this court concludes that Counts XVI and XIX alleging claims of intentional infliction of emotional distress against Peterson and Tedrick do not reach the necessary threshold of outrageous and extreme conduct. As a result, Counts XVI and XIX are dismissed.

### B. SECTION 1983 CLAIMS— STATE ACTION

In Counts X, XI, XX, and XXI, Plaintiff alleges that Peterson and Tedrick are liable for damages under § 1983 based upon unlawful seizure and unlawful search. Section 1983 imposes liability only where a person acts "under color" of a state "statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983; *Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 2103, 138 L.Ed.2d 540 (1997). However, § 1983 can sometimes impose liability upon a private individual. *Richardson*, 117 S.Ct. at 2103. In determining whether a private individual's action constitutes state action, courts have looked to the level of government involvement in the private individual's actions. *Anast*, 956 F.Supp. at 797. A state can be held responsible for a private decision only when it has exercised coercive power, or has provided such significant encouragement, that the choice must be deemed to be that of the state. *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 311, 136 L.Ed.2d 227 (1996); *Anast*, 956 F.Supp. at 797–98.

In this case, Plaintiff alleges that Ramseyer ordered Peterson to draw blood from Plaintiff and that Tedrick then performed the blood test. She also alleges that Ramseyer, Peterson and Tedrick were acting in concert to detain Plaintiff. This court concludes that Plaintiff has sufficiently alleged that Ramseyer exercised coercive power so that the actions of Peterson and Tedrick may be deemed those of the state. Accordingly, Counts X, XI, XX and XXI cannot be dismissed on this basis.

These counts, however, like the § 1983 counts against Ramseyer, cannot be maintained by Plaintiff if probable cause existed for her arrest. Accordingly, proceedings regarding these counts will also be stayed pending the outcome of Plaintiff's appeal to the Illinois Appellate Court.

This court further notes that Plaintiff cannot maintain a § 1983 cause of action against Peterson and Tedrick based upon her brief detention at the Medical Center prior to Ramseyer's arrival. Prior to Ramseyer's arrival, there was no state action. See, e.g., *Copeland v. Northwestern Memorial Hosp.*, 964 F.Supp. 1225, 1238–40 (N.D.Ill.1997) (hospital and its staff members' actions not taken under color of state law and did not constitute arrest, interrogation or jailing of plaintiff where complaint alleged that plaintiff voluntarily went to the hospital's emergency room, a nurse and doctor interrogated plaintiff regarding his commission of a bank robbery and placed him in a locked observation room, the nurse later returned with two Chicago police officers who arrested him and the nurse told the officers that the hospital was holding plaintiff for them).

### C. REMAINING STATE LAW CLAIMS

Defendants Peterson, Tedrick and Covenant Medical Center also argue that the state law claims against them must be dismissed because their actions were authorized by an Illinois statute. Section 11–501.2 of the Illinois Vehicle Code provides, in pertinent part:

> Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer

has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, any other drug, or combination of both has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both. 625 Ill. Comp. Stat. 5/11-501.2(c)(2) (West 1996).

Defendants attached the affidavit of Michael Cloyd to their Motion to Dismiss. In his affidavit, Cloyd states that, on March 15, 1997, he was a passenger in a vehicle involved in a motor vehicle accident with a vehicle driven by Plaintiff. He also states that he was injured in the accident and was taken to Covenant Medical Center by ambulance for treatment of a bleeding head wound.

This court notes that a district court, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), generally cannot consider material outside the pleadings unless it converts the motion to dismiss into a motion for summary judgment and offers the other party an opportunity to respond. Fed R. Civ. P. 12(b); *Edward Gray Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 94 F.3d 363, 366 (7th Cir.1996). However, in this case, Plaintiff does not dispute that the accident caused personal injury to Cloyd and this fact is consistent with the allegations in Plaintiff's complaint. Because the parties agree on this fact, it is permissible for this court to consider this fact as stipulated in ruling on the Motion to Dismiss. See *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n. 3 (7th Cir.1997); see also *People v. Ruppel*, No. 4-97-0509 (December 31, 1997) (unpublished order), leave to appeal denied, *People v. Ruppel*, 177 Ill.2d 582, 232 Ill.Dec. 456, 698 N.E.2d 547 (1998) (parties stipulated an accident involving bodily injury occurred).

Plaintiff does not dispute that section 11-501.2(c)(2) of the Illinois Motor Vehicle Code applies based upon the facts of this case. However, she argues that the statute does not authorize a law enforcement officer to

order a blood test under these circumstances. She contends that the statute contemplates a "request" by a law enforcement officer which a person "shall" submit to. However, she asserts that the person still does, in fact, have the ability to refuse the test subject to the fact that evidence of the refusal is admissible in a civil or criminal proceeding. See 625 Ill. Comp. Stat. 5/11-501.2(c)(1) (West 1996). The Illinois Appellate Court rejected this strained interpretation of section 11-501.2(c)(2) when Plaintiff made the argument in appealing the summary suspension of her driver's license. *Ruppel*, No. 4-97-0509, slip op. at 5. This court also concludes that the plain language of section 11-501.2(c)(2) authorizes a law enforcement officer to order a blood test when the suspect refuses to submit to a blood test. This interpretation is also consistent with the well established case law cited previously by this court. Accordingly, this court finds that section 11-501.2(c)(2) authorized Ramseyer to order the blood test, providing he had probable cause to believe Plaintiff was under the influence of alcohol, even if Plaintiff did not consent. See *Connor v. Foster*, 833 F.Supp. 727, 732 (N.D.Ill.1993).

More importantly, section 11-500.1 of the Illinois Vehicle Code provides:

(a) A person authorized under this Article to withdraw blood or collect urine cannot be civilly liable for damages when the person, in good faith, withdraws blood or collects urine for evidentiary purposes under this Code, upon the request of a law enforcement officer, unless the act is performed in a willful and wanton manner.

(b) As used in this Section, "willful and wanton manner" means a course of action that shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the health or safety of another. 625 Ill. Comp. Stat. 5/11-500.1 (West 1996).

This section was recently enacted by the Illinois legislature and was effective December 31, 1996.

■ Plaintiff argues that this statute's immunity does not apply because Peterson and Tedrick's action in "[g]rabbing plaintiff's

arm" is "most definitely an example of willful and wanton conduct." This court cannot agree. This court concludes that Plaintiff's claim for damages against Peterson and Tedrick is exactly the type of case the Illinois legislature intended to prevent by enacting section 11–500.1. Here, a law enforcement officer ordered Defendants Peterson and Tedrick to withdraw blood from Plaintiff after Plaintiff was involved in an accident involving bodily injury and after Plaintiff had been arrested for DUI. While Plaintiff has alleged that Ramseyer did not have probable cause for the arrest, this court specifically finds that Peterson and Tedrick could not have any obligation to question the existence of probable cause. Accordingly, Plaintiff cannot hold Peterson and Tedrick liable for forcing her to submit to an unwanted medical procedure. See *Connor*, 833 F.Supp. at 732. Further, the fact that Peterson and Tedrick grabbed Plaintiff's arm to withdraw the blood simply cannot be considered "utter indifference to or conscious disregard for the health and safety of another." See 625 Ill. Comp. Stat. 5/11–500.1(b) (West 1996). Defendants Peterson and Tedrick are entitled to immunity under this statute for their actions in withdrawing blood from Plaintiff.

Further, this court finds that Plaintiff cannot maintain a cause of action against Peterson, Tedrick, or Covenant Medical Center based upon her brief detention of 10 to 20 minutes prior to the arrival of Ramseyer and her arrest. Based upon the allegations of her complaint, Plaintiff voluntarily was taken to the Medical Center after she was involved in an automobile accident. She was detained by Medical Center employees until Ramseyer arrived 10 to 20 minutes later and "immediately" arrested her. This brief detention is not actionable based upon the facts alleged.

This court specifically finds that it appears beyond doubt that Plaintiff can prove no set of facts in support of her state law claims against Peterson, Tedrick and Covenant Medical Center which would entitle her to relief. Accordingly, Counts IX, XII–XIX, and XXII–XXIV must be dismissed.

IT IS THEREFORE ORDERED:

(1) Defendant Ramseyer's Motion to Dismiss (# 5) is GRANTED, in part. Count VII of Plaintiff's Complaint is dismissed with prejudice.

(2) The Motion to Dismiss (# 8) filed by Defendants Peterson, Tedrick and Covenant Medical Center is GRANTED, in part. Counts IX, XII–XIX, and XXII–XXIV are dismissed with prejudice.

(3) The remaining counts of Plaintiff's complaint, Counts I–VI, VIII, X, XI, XX, and XXI are stayed pending the outcome of Plaintiff's appeal to the Fourth District Appellate Court in *People v. Ruppel*, Case No. 4–98–0411. This court will then proceed as appropriate in light of the disposition of the state court action. See *Dwyer*, 12 F.Supp.2d at 837. Plaintiff is to notify this court once the Illinois Appellate Court has rendered its decision.